United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 16, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-20109
_____

UNITED STATES OF AMERICA

                    Plaintiff - Appellant

v.

GIOVANNI FLORES

                    Defendant - Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston
_____

Before KING, Chief Judge, and JOLLY and DENNIS, Circuit Judges.

KING, Chief Judge:

The government appeals from the district court's pretrial dismissal of an indictment charging Defendant-Appellee Giovanni Flores with violating 18 U.S.C. § 922(g)(5)(A) by being an alien, illegally or unlawfully in the United States, in possession of a firearm. Because the district court erred in concluding that Flores was not illegally or unlawfully in the United States, we REVERSE and REMAND.

## I.  BACKGROUND

The facts essential to this appeal are undisputed. Giovanni Flores is a native of El Salvador who illegally entered the

-1-

United States in January 2001.  He was not inspected by immigration officials when he entered, and he secured no authorization of any kind to enter the country.  Apparently, his illegal entry and unlawful presence in the United States went undetected.  In March 2001, the Attorney General designated El Salvador as a country whose citizens may be eligible for "temporary protected status" ("TPS") under 8 U.S.C. § 1254a.[1]  In May 2001, Flores surfaced and applied for TPS.

An alien whose application for TPS is granted is entitled to certain benefits.  See 8 U.S.C. § 1254a (2000).  Most importantly, the government "shall not remove the [temporarily protected] alien from the United States during the period in which such status is in effect," and it "shall authorize the alien to engage in employment in the United States and provide the alien with an 'employment authorized' endorsement or other appropriate work permit."[2]  8 U.S.C. § 1254a(a)(1).

_____

[1]      The Attorney General may so designate a country if it suffers from armed conflict, a natural disaster, or another extraordinary, temporary condition that threatens its citizens and therefore makes removal (i.e., deportation) back to the country undesirable for humanitarian reasons.  See 8 U.S.C. § 1254a(b) (2000).  The Attorney General made Salvadoran nationals eligible for TPS in 2001 following a series of earthquakes in that country.

[2]      In addition, an alien who receives TPS "shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States."  8 U.S.C. 1254a(d)(4).  Moreover, the temporarily protected alien "may travel abroad with the prior consent of the Attorney General" and "for purposes of adjustment of status under [8 U.S.C. § 1255] and change of status under [8 U.S.C. § 1258], the alien shall be considered as being

An alien who applies for TPS and establishes a prima facie case of eligibility is entitled to "temporary treatment benefits" while his TPS application is pending. See 8 U.S.C. § 1254a(a)(4)(B); 8 C.F.R. § 244.10(a). Temporary treatment benefits consist of two of the benefits available to aliens who actually obtain TPS--namely, non-removability and employment authorization. See U.S.C. § 1254a(a)(1) & (4)(B); 8 C.F.R. § 244.10(e).

After applying for TPS in May 2001 and paying the requisite fees, Flores was issued an employment authorization card and a social security card. Thus, he was deemed to have established a prima facie case for eligibility, and accordingly, he was granted temporary treatment benefits. See 8 C.F.R. § 244.10(e) ("Temporary treatment benefits shall be evidenced by the issuance of an employment authorization document."). Thus, although the government had not granted his application for TPS, Flores acquired a temporary stay of removal pending disposition of his application. See id.; see also 8 U.S.C. § 1254a(a)(1)(A) & (4)(B).

In October 2002, while still awaiting the disposition of his May 2001 application, Flores reapplied for TPS. In November 2002, Flores applied for and received an extension of his work permit. Thus, during the relevant times, Flores maintained

---

in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(3)-(4); accord 8 C.F.R. § 244.10(f)(2)(iii)-(iv).

temporary treatment benefits.  Neither the May 2001 nor the October 2002 TPS application had been ruled upon during the time period relevant to his case.

Flores's employment authorization, together with his social security card and Texas identification card, allowed him to obtain a commission as a private security officer from the Texas Commission on Private Security.  He was hired by a private security firm, Bayou City Patrol, and worked as a security guard.  As part of his job, he carried a loaded firearm.

On June 8, 2003, as part of an ongoing investigation[3] of private security firms employing and arming illegal aliens as security guards in Houston, Texas, Flores was arrested for possession of a firearm while being an alien illegally or unlawfully in the country in violation of 18 U.S.C. § 922(g)(5)(A).  On July 8, a grand jury returned an indictment charging Flores with a violation of 18 U.S.C. § 922(g)(5)(A).  Flores entered a plea of not guilty on July 13, 2003.

On September 22, Flores filed a motion to dismiss the indictment.  He argued that because he had applied for TPS and had secured temporary treatment benefits prior to his arrest, he was not an alien illegally or unlawfully in the United States.

---

[3]      This investigation was a cooperative effort involving agents and officers from the Bureau of Alcohol, Tobacco, and Firearms (the "ATF"), the Bureau of Immigration and Customs Enforcement, the Texas Alcoholic Beverage Commission, the Houston Police Department, the Texas Commission on Private Security, and the Harris County Sheriff's Office.

The district court agreed and dismissed the indictment.  The government now appeals.

## II.  DISCUSSION

### A.  Dismissal of the Indictment under Rule 12

Initially, the government contends that the district court erred procedurally in dismissing the indictment.  We disagree, however, because the district court based its disposition entirely on its resolution of a legal question and the facts are undisputed.  Both Flores and the government agree that Flores initially entered the country illegally.  Both parties agree that prior to his arrest, Flores applied for TPS and, while his TPS applications were pending, he received an employment authorization card and social security card.[4]  The sole question in this case, therefore, is a question of law: whether Flores's application for TPS and subsequent receipt of temporary treatment

---

[4]     Furthermore, we note that both parties agree that Flores had not actually received TPS before his arrest--he had received temporary treatment benefits but his TPS applications were still pending.  The opinion of the district court below inexplicably states that Flores had been granted TPS.  This statement, to the extent that it was a factual finding, is clearly erroneous.  Nowhere in the record is it suggested that the government ever disposed of Flores's TPS applications (either by granting or denying them), and uncontradicted testimony in the record reveals that the government had not acted on Flores's applications.  Citing only the district court opinion below, Flores's appellate brief to this court initially represented that Flores had been granted TPS prior to his arrest.  However, Flores's attorney admitted at argument that Flores's applications were still pending at the time of his arrest, and he apologized for any misrepresentation in his brief regarding this fact resulting from his reliance on the district court's opinion.

benefits cured his illegal entry into the United States for the purposes of § 922(g)(5)(A).[5]

In this circuit, "'[t]he propriety of granting a motion to dismiss an indictment under [FED. R. CRIM. P.] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.'" United States v. Korn, 557 F.2d 1089, 1090 (5th Cir. 1977) (quoting United States v. Miller, 491 F.2d 638, 647 (5th Cir. 1974)). "If a question of law is involved, then consideration of the motion is generally proper."[6] Id.

---

[5] The government's framing of the issue in the district court in response to Flores's motion to dismiss is illustrative of the legal, as opposed to factual, nature of the question. The government stated:

> The issue before the Court is one of statutory interpretation. Specifically, the issue is whether an alien, who entered the United States without inspection or authorization, is "illegally or unlawfully in the United States," within the meaning of Title 18, United States Code, Section 922(g)(5)(A); and, if so, whether (a) submission of an application or registration by that alien for Temporary Protective Status, and/or (b) the receipt of an Authorization Document, immunizes the alien from prosecution under Section 922(g)(5)(A) by altering his legal status.

Similarly, the government's principal brief on appeal presents the issue as a legal question of statutory interpretation and describes the facts as uncontested.

[6] As a number of other courts have recognized, "'a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact.'" United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986) (quoting United States v. Jones, 542 F.2d 661, 664 (6th Cir.

-6-

(citing United States v. Jones, 542 F.2d 661, 664 (6th Cir.

1976)).  Thus, the district court did not err by considering the

purely legal question at hand in Flores's pretrial motion.  See

id.; see also United States v. Matassini, 565 F.2d 1297, 1313-14

(5th Cir. 1978) (affirming the district court's dismissal of an

indictment based on its pretrial resolution of the defendant's

complete legal defense that his pardon removed him from the ambit

of the felon-in-possession-of-a-firearm statute).

The government relies on a number of cases from other

circuits for the proposition that a district court may not look

beyond the face of the indictment and rule on the merits of the

charges pretrial.  See, e.g., United States v. Salman, 378 F.3d

1266, 1267-68 (11th Cir. 2004) (per curiam);[7] United States v.

---

1976)); United States v. Coia, 719 F.2d 1120, 1123 (11th Cir.
1983).

[7]     In Salman, the defendant was arrested under
§ 922(g)(5)(A) for possessing a firearm while being an alien
"illegally or unlawfully in the United States."  The defendant
filed a motion to dismiss the indictment, arguing that based on
undisputed facts, he was not "illegally or unlawfully in the
United States" as a matter of law at the time of his arrest.
Specifically, the defendant argued that he: (1) had an
application for adjustment of status pending; (2) was eligible to
file for permanent residency; and (3) was not unlawfully present
solely by virtue of his failure to maintain student status.
Salman, 378 F.3d at 1267.  The district court agreed and
dismissed the indictment.  The Eleventh Circuit reversed, holding
that "[b]y looking beyond the face of the indictment and ruling
on the merits of the charges against Salman, the district court
in effect granted summary judgment in favor of the defendant."
Id.  The Salman court relied upon Eleventh Circuit precedent,
stating that "[t]here is no summary judgment procedure in
criminal cases.  Nor do the rules provide for a pre-trial
determination of sufficiency of the evidence."  Id. at 1268

-7-

Jensen, 93 F.3d 667, 669-70 (9th Cir. 1996). Regardless of those other courts' conclusions, however, we are bound by our own circuit's precedent and, therefore, find no error in the district court's procedure of resolving a legal question in a pre-trial motion to dismiss the indictment. See, e.g., Korn, 557 F.2d at 1090; Matassini, 565 F.2d at 1313-14; see also Hogue v. Johnson, 131 F.3d 466, 491 (5th Cir. 1997) (noting that one panel of this circuit may not overturn another panel absent an intervening decision to the contrary by the Supreme Court or this court en banc).

Moreover, we believe that our approach is correct for a number of reasons. First, in contrast to the Eleventh Circuit's conclusion, dismissing an indictment based on the resolution of a legal question in the presence of undisputed facts is authorized by the FEDERAL RULES OF CRIMINAL PROCEDURE. Rule 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(2). Because a question of law presented in a case involving undisputed facts can be determined without a trial of the general issue, Rule 12

(quoting United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992)). The Salman court acknowledged that at least one circuit (the Sixth Circuit) disagreed with its conclusion, but it noted that cases from three other circuits--the Third, Eighth, and Ninth--supported its resolution of the procedural issue. See id. at 1268 n.5.

-8-

authorized the district court to rule on Flores's motion to dismiss in this instance.  This conclusion is supported by the Supreme Court's opinion in United States v. Covington, 395 U.S. 57, 60-61 (1969).  In Covington, the defendant filed a pretrial motion to dismiss the indictment on the ground that he had a complete defense in that his Fifth Amendment privilege against incrimination had been violated.  The district court granted the motion and dismissed the indictment.  The government appealed to the Supreme Court, which rejected the government's contention that the dismissal was improper and affirmed the district court. The Court found that the district court properly ruled on the pretrial motion because it involved an issue of law and not a factual dispute.  The Court noted that under FED. R. CRIM. P. 12, a defense is "capable of determination without the trial of the general issue . . . if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."  Covington, 395 U.S. at 60.  Finally, our approach avoids the waste of judicial resources that results from "legally meritless cases being sent to trial."[8]

---

[8]    Our conclusion is further supported by the approaches taken in the Sixth and Tenth Circuits.  See, e.g., United States v. Hall, 20 F.3d 1084, 1087-88 (10th Cir. 1994) (affirming the district court's dismissal of an indictment "where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case"); United States v. Levin, 973 F.2d 463, 465-70 (6th Cir. 1992) (affirming the district court's dismissal of the indictment because the undisputed facts allowed for a disposition of the legal question without a trial); Jones, 542 F.2d at 664-66.

Salman, 378 F.3d at 1269 (recognizing the disadvantages of prohibiting a district court from making pretrial legal determinations on undisputed facts).  Accordingly, the district court did not procedurally err.

## B.    Flores's Legal Status

The government also argues that the district court erred on the merits because it granted Flores's motion to dismiss the indictment after concluding that Flores was not "illegally or unlawfully in the United States" and thus not in violation of § 922(g)(5)(A).  The government claims that Flores's application for TPS and receipt of temporary treatment benefits did not alter Flores's status as an illegal alien for the purposes of § 922(g)(5)(A) and that he was therefore subject to prosecution for possessing a firearm.  We agree with the government.

"A challenge to an indictment based on the legal sufficiency of uncontested facts is an issue of law reviewed de novo." United States v. Banks, 339 F.3d 267, 269 (5th Cir. 2003) (emphasis omitted).  We also analyze questions of statutory interpretation de novo.  See United States v. Fitch, 137 F.3d 277, 281 (5th Cir. 1998); see also United States v. Atandi, 376 F.3d 1186, 1188 (10th Cir. 2004) ("[W]e review de novo the district court's dismissal of the indictment based on its interpretation of the underlying criminal statute.").

Section 922(g)(5)(A) provides:  "It shall be unlawful for any person . . . who, being an alien . . . is illegally or

-10-

unlawfully in the United States . . . [to] possess in or affecting commerce, any firearm or ammunition . . . ." The phrase "illegally or unlawfully in the United States" is not defined by the statute. We must construe undefined statutory terms "in accordance with [their] ordinary and natural meaning, as well as the overall policies and objectives of the statute." United States v. Lowe, 118 F.3d 399, 402 (5th Cir. 1997) (internal citations omitted).

We read the phrase "illegally or unlawfully in the United States" in § 922(g)(5)(A) to include those aliens, like Flores, who entered the country illegally and subsequently qualified for temporary treatment benefits under 8 U.S.C. § 1254a. Our interpretation is informed by the administrative regulations promulgated by the ATF interpreting § 922(g)(5)(A). See 27 C.F.R. § 478.11. Those regulations define an "[a]lien illegally or unlawfully in the United States" as an alien who is "not in valid immigrant, nonimmigrant or parole status[;] [t]he term includes any alien . . . [w]ho unlawfully entered the United States without inspection and authorization by an immigration officer and who has not been paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act (INA) . . . ." See id. Although interpreting 18 U.S.C. § 922(g)(5)(A) poses a question involving a mixture of both immigration and criminal law, Congress delegated authority to implement § 922(g)

-11-

to the ATF.[9]  See 18 U.S.C. § 926(a) (authorizing "such rules and regulations as are necessary to carry out the provisions of this chapter").  Thus, without deciding whether full Chevron[10] deference is appropriate in this instance, we owe at least some degree of deference to the ATF's interpretive regulation of § 922(g)(5)(A) because it is "both reasonable and consistent with our interpretive norms for criminal statutes."  Atandi, 376 F.3d at 1189 (affording "some deference" to the ATF's interpretation of § 922(g)(5)(A)) (citing Babbitt v. Sweet Home Chapter of Cmtys. for a Greater Or., 515 U.S. 687, 703 (1995)).  Under § 478.11, Flores is an alien illegally or unlawfully in the United States because he "unlawfully entered the United States without inspection and authorization by an immigration officer" and because his application for TPS and receipt of temporary treatment benefits did not constitute a "parole[] into the United States under section 212(d)(5) of the [INA]."  27 C.F.R. § 478.11; see also 8 U.S.C. § 1182(d)(5)(A); 8 U.S.C. § 1254a.

Flores argues that he was not in the United States illegally or unlawfully once he received temporary treatment benefits because those benefits--namely, a stay of removal and an employment permit--"authorized" him to be in the country.  He

_____

[9]    Moreover, neither the INA, 8 U.S.C. § 1101 et seq., nor its corresponding immigration regulations define the phrase "illegally or unlawfully in the United States."

[10]    Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).

argues that under <u>United States v. Igbatayo</u>, 764 F.2d 1039 (5th Cir. 1985), such authorization shields him from prosecution under § 922(g)(5)(A). <u>Igbatayo</u>, however, stands for no such proposition. There we stated:

> [I]t is clear that an alien who is in the United States without authorization is in the country illegally. After failing to maintain the student status required by his visa, Igbatayo was without authorization to remain in this country. He thus was in the same position legally as the alien who wades across the Rio Grande or otherwise enters the United States without permission.

<u>Igbatayo</u>, 764 F.2d at 1040. As <u>Igbatayo</u> explains, an alien without any authorization whatsoever is in the country illegally. That conclusion is obvious. But it does not follow that an alien who has been granted limited temporary authorization (i.e., a temporary stay of removal and a temporary work permit) is in the country legally for all purposes, rendering him immune to prosecution under § 922(g)(5)(A). Rather, consistent with <u>Igbatayo</u>, an alien may be temporarily granted a stay of removal and be permitted to work during that stay, but still be considered "illegally or unlawfully in the United States." <u>See</u> <u>Hussein v. INS</u>, 61 F.3d 377, 381 (5th Cir. 1995) (holding that a temporary stay of removal "did not change the alien's previously illegal status into a lawful status"); <u>United States v. Bazargan</u>, 992 F.2d 844, 848-49 (8th Cir. 1993) (holding that an alien was illegally in the United States for the purposes of § 922(g)(5)(A)

despite his receipt of employment authorization).[11]  Thus, despite

his receipt of temporary treatment benefits pending disposition

of his application for TPS, Flores remained illegally or

unlawfully in the United States under § 922(g)(5)(A).[12]

_____

[11]    Flores also cites United States v. Brissett, 720 F.
Supp. 90 (S.D. Tex. 1989), for the proposition that he was not
illegally or unlawfully in the country under § 922(g)(5)(A)
because he received a stay of removal and an employment
authorization document.  Brissett, however, involved an alien
whose application for an adjustment of status to permanent
resident was pending at the time of his arrest--not an alien who,
like Flores, applied only for TPS.  TPS differs from an
adjustment of status to permanent resident both in the temporary
treatment benefits conferred upon qualified applicants, compare
Brissett, 720 F. Supp. at 91, with 8 U.S.C. § 1254a(a)(4), as
well as in the benefits conferred upon those aliens whose
applications are granted.  See 8 U.S.C. § 1254a(a); 8 U.S.C.
§ 1255; see also 8 U.S.C. § 1254a(f)(1) ("During a period in
which an alien is granted temporary protected status under this
section . . . the alien shall not be considered to be permanently
residing in the United States under color of law.").  Thus, we
need not, and do not, decide whether the district court in
Brissett reached the correct conclusion.

[12]    At oral argument, Flores also pointed to 8 U.S.C.
§ 1254a(f) in support of his contention that he was not illegally
or unlawfully in the United States.  Section 1254(a)(f) provides:

> During a period in which an alien is granted temporary
> protected status under this section[,] . . . for
> purposes of adjustment of status under section 1255 of
> this title and change of status under section 1258 of
> this title, the alien shall be considered as being in,
> and maintaining, lawful status as a nonimmigrant.

8 U.S.C. § 1254a(f)(4).  This provision, however, is irrelevant
to Flores's case for at least two reasons.  First, Flores applied
for, but had not been granted, TPS prior to his arrest for
possession of a firearm.  Section 1254a(f)(4) applies only to
those aliens who have been granted TPS.  See 8 U.S.C.
§§ 1254a(a)(4), (f).  Second, § 1254a(f)(4) explicitly states
that an alien with TPS shall be considered as being in, and
maintaining, lawful status "for purposes of adjustment of status
under section 1255 . . . and change of status under section 1258
. . . ."  8 U.S.C. § 1254a(f)(4) (emphasis added).  This

-14-

### III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings not inconsistent with this opinion.

---

provision merely affects a temporarily protected alien's ability to seek an adjustment or change in status; it does not alter an alien's legal status for the purposes of § 922(g)(5)(A).  See generally 8 U.S.C. §§ 1255, 1258.

-15-