HARWOOD, Retired Justice
(concurring specially).
I concur in the rationale and holdings of the main opinion, but I write specially to identify certain additional rationales that further guide my concurrence in the judgment.
Turning first to the alternative reason given by the trial court in its written order for dismissing the five felony counts of the indictment, i.e., that § 17-l-7(b), Ala.Code 1975, is unconstitutionally vague, the following principles must be kept in mind:
“The standard of review for determining the constitutionality of a statute was stated in State Board of Health v. Greater Birmingham Ass’n of Home Build *424 ers, Inc., 384 So.2d 1058, 1061 (Ala.1980):
“‘Before turning to the constitutional issue posed in this case, it is appropriate to reiterate the fundamental proposition that validly enacted legislation is presumed to be constitutional. As we stated in Mobile Housing Board v. Cross, 285 Ala. 94, 97, 229 So.2d 485, 487 (1969):
“ ‘ “Every presumption is in favor of the constitutionality of an act of the legislature and this court will not declare it invalid unless in its judgment, the act clearly and unmistakably comes within the inhibition of the constitution.”
“ ‘We mil not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations. See Ex parte Huguley Water System, 282 Ala. 633, 213 So.2d 799 (1968).’
“In Home Indemnity Co. v. Anders, 459 So.2d 836, 840 (Ala.1984), this Court stated:
“ ‘In determining whether the act is constitutional, we are bound by the following presumption:
“ ‘ “[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and in-tendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.”
“ ‘Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944).’ ”
Town of Vance v. City of Tuscaloosa, 661 So.2d 739, 742-43, (Ala.1995) (emphasis added).
The Alabama Supreme Court recently expressed those concepts in a more condensed form in a case where the constitutional challenges to a legislative act included a claim that the act was unconstitutionally vague: “In addressing the due-process and equal-protection challenges, this Court must presume that the Act is valid and construe the Act in favor of its constitutionality.” Northington v. Alabama Dep’t of Conservation & Natural Res., 33 So.3d 560, 565 (Ala.2009) (citing McInnish v. Riley, 925 So.2d 174 (Ala.2005)).
As part of its effort to construe § 17-1-7(b), the trial court queried in its written order: “What conduct constitutes using ‘official authority or position for the purpose of influencing the vote or political action of any person ... ’?” Before this court, the parties have answered that question, so as to agree on a standard that provides a “reasonable construction” for determining the level of conduct that § 17-l-7(b) criminalizes. In her principal brief, Worley asserts that “the felony statute only prohibits the use of threats of harm or promises of reward in order to force political support.” (Worley’s brief, p. 9.) She asserts that “[t]he Attorney General has repeatedly given official opinions supporting this view of the statute.” (Worley’s brief, p. 9.) Thereafter, she declares sequentially that the “more reasonable interpretation” is that a felony exists under § 17-l-7(b) “only where the official threatens to (or actually does) take or withhold some official government action, in order to compel political support” (Wor-ley’s brief, p. 28); that § 17-l-7(b) applies *425 “only to officials who use the uniquely governmental powers of their offices in order to offer rewards for supporting them or to threaten harm for a lack of support” (Worley’s brief, p. 30); that “official opinions of the Attorney General recognize that § 17-1-7 prohibits only threats of retaliation and promises of rewards [and] does not prohibit officials from doing things that are not threats or promises” (Worley’s brief, p. 32); that “[n]o part of the statute applies without a promise of reward or threat of reprisal” (Worley’s brief, p. 34); and that the prohibition in § 17-l-7(b) against “influencing the vote” of someone “exists only when there is a threat of harm or promise of reward in return for the vote” (Worley’s brief, p. 44).
The attorney general concurs with Wor-ley in his reply brief, stating that “[t]his Office correctly interpreted the statute as directed toward ‘officials trying to put undue influence on persons under their control by offering a reward or threat of reprisal for voting in a certain way.’” (State’s reply brief, pp. 18-19.)
Thus construed, § 17-l-7(b) is not vague as applied to Worley’s alleged conduct. Whether that conduct rose to the level of the conduct prohibited by that “reasonable construction” is not a question before this court.
Turning next to the primary reason the trial court gave in its written order for partially granting Worley’s motion to dismiss by dismissing the felony counts of the indictment against her, I agree with the main opinion that the motion to dismiss exceeded the reach allowed such a motion under Rule 13.5(c)(1), Ala. R.Crim. P. As the main opinion explains, an indictment is subject to dismissal by the trial court in the very limited circumstances specified by Rule 13.5(c)(1) of “objections to the venire, the lack of legal qualifications of an individual grand juror, the legal insufficiency of the indictment, or the failure of the indictment to charge an offense.” Conversely, as the main opinion further explains, “[njeither Rule 13.5(c)(1) nor Alabama caselaw permits a trial court to dismiss an indictment based on the court’s pretrial determination of sufficiency of the State’s case.” 102 So.3d at 415. Worley argues that “[u]nder the particular circumstances of this case, we are not dealing with a question of evidentiary sufficiency, but are instead dealing with a pure question of law.” (Worley’s brief, p. 50.) The main opinion points out, however, that the trial court’s analysis “was based almost entirely on the court’s examination of the evidence it understood the State would offer at trial and on its determination that that evidence did not fit within the elements of the felony statute.” 102 So.3d at 415.
It must be noted that the indictment nowhere references or quotes from the letter the parties agree Worley sent to certain of her employees or the enclosures said to have accompanied the letter. Likewise, the indictment nowhere references the following assertion the State subsequently made in its response to Worley’s motion to dismiss:
“The State also expects to introduce evidence that the mailing did in fact include the referenced bumper sticker as well as a donation envelope. Further, the State expects to present evidence that Defendant Worley obtained the home addresses of some of the respective employees by virtue of her position as the chief executive in the Office Of Secretary Of State. Additionally, the State expects witnesses to testify that Worley, in her capacity of Secretary Of State, told employees that she could find out if they voted and for whom they did vote.”
(C. 64; footnote omitted.)
Thus, the parties roam well outside the enclosure of the text of the indictment *426 when they proceed to argue whether the letter, placed in context, constituted an improper use by Worley of her position as secretary of state for purposes prohibited by § 17 — 1—7(b), as the State contends, or represented “nothing more than a polite request with a promise that there would be no reprisal against those who declined,” as Worley contends. (Worley’s brief, p. 30.)
In the final analysis, the trial court’s dismissal of the felony charges involved a pretrial fact-based determination of the evidence the trial court believed the State might or might not present at trial. Although the cases on point from this court that the main opinion reviews in Part I.B. are fully supportive of the rationale and holding of the main opinion, I find additional support in opinions from various federal circuit courts of appeal. In United States v. Critzer, 951 F.2d 306 (11th Cir.1992), the government opposed the defendant’s dismissal motions directed at successive indictments by asserting that “the court was not to look beyond the face of the indictment in determining its sufficiency,” but the government then “gratuitously listed the facts that it expected to prove at trial and explained how those facts constituted the offenses charged.” 951 F.2d at 307. Thereafter, “[i]n analyzing the motion to dismiss the [trial] court looked beyond the face of the indictment and considered the facts proffered by the government. The court determined that, assuming the facts to be true, defendant’s actions did not constitute a violation of federal law,” and it dismissed all counts of the indictment. Id. In reversing, the United States Court of Appeals for the Eleventh Circuit observed:
“There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. Moreover, this court is constitutionally barred from ruling on a hypothetical question. The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.”

Id.

Similar to Rule 13.5(c)(1), Ala. R.Crim. P., Rule 12(b)(3)(B), Fed.R.Crim.P., states that the district court may entertain a motion alleging a defect in an indictment and “at any time while the case is pending, the court may hear a claim that the indictment ... fails to invoke the court’s jurisdiction or to state an offense.” Moreover, and more broadly, Rule 12(b)(2), Fed. R.Crim.P., provides that “[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue.” Although the government argued in Critzer that the district court had “acted improperly in piercing the language of the indictments and dismissing them” and that it should not have considered the facts the government proffered, the government nonetheless invited the court of appeals to address the merits of the issue “to obviate the possibility of a second appeal.” 951 F.2d at 307. The court of appeals declined to look beyond the four corners of the indictment to assess its sufficiency and reversed the district court’s dismissal of the indictments. 951 F.2d at 308.
In United States v. Salman, 378 F.3d 1266 (11th Cir.2004), the district court granted the defendant’s motion to dismiss on the basis that certain undisputed facts that contradicted, as a matter of law, an indispensable element of each of the counts of the indictment. On appeal, the Eleventh Circuit Court of Appeals held:
‘We conclude that the order appealed from must be reversed for procedural reasons.
“By looking beyond the face of the indictment and ruling on the merits of *427 the charges against [the defendant], the district court in effect granted summary judgment in favor of the defendant.”
B78 F.3d at 1267 (footnote omitted).
The Eleventh Circuit noted that the Sixth Circuit Court of Appeals had taken a different position, believing that Rule 12, Fed.R.Crim.P., provided a basis for granting a pretrial motion to dismiss a criminal indictment, but that the Eleventh Circuit, as well as the Third, Eighth, and Ninth Circuits, rejected that view. 378 F.3d at 1268. The court stated in a footnote that this would be its view of things even if a district court dismissed an indictment as insufficient as a matter of law to charge an offense based on the stipulated or undisputed facts of the case. 378 F.3d at 1267 n. 4.
The Sixth Circuit Court of Appeals, relying on its understanding of the broader mandate of “Rule 12 of the Federal Rules of Criminal Procedure and its component parts [to] encourage district courts to entertain and dispose of pretrial criminal motions before trial if they are capable of determination without trial of the general issues,” held in United States v. Levin, 973 F.2d 463, 467 (6th Cir.1992), that the district judge in that case was authorized to dismiss multiple counts of an indictment on the basis that the undisputed extrinsic evidence before him demonstrated that the defendants could not, as a matter of law, have formulated the requisite criminal intent. The court of appeals noted that the district judge had reasoned that “ ‘it would be a directed verdict at the end, and I don’t know why I have to sit through two or three weeks while you put on what we know the evidence will be.’ ” 973 F.2d at 466. The dissenting circuit judge of the three-judge panel in Levin charged that “[t]he majority’s decision has knowingly or unknowingly endorsed a criminal justice system that allows a defendant to ‘try’ the merits of a criminal case in a pre-trial hearing before a judge.” 973 F.2d at 471.
The Fifth Circuit and the Tenth Circuit have taken the same approach as the majority took in Levin, likewise relying on the broad authorization of Rule 12(b)(2), Fed.R.Crim.P., whereby “[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue.” See United States v. Flores, 404 F.3d 320, 325 (5th Cir.2005); United States v. Todd, 446 F.3d 1062, 1068 (10th Cir.2006). The Todd court noted that a district court might dismiss charges at the pretrial stage in the limited circumstance where the operative facts were undisputed. (In the present case, whether Worley told the employees she could find out if they voted and for whom they voted is a potentially operative fact that is not undisputed.) The Fifth Circuit pointed out in Flores that this interpretation of Rule 12, Fed. R.Crim.P., “avoids the waste of judicial resources that result from ‘legally merit-less cases being sent to trial,’ ” 404 F.3d at 325 (footnote omitted), referencing the statement in Salman, whereby the Eleventh Circuit had “recognize[d] that our system of criminal procedure may result in legally meritless cases being sent to trial, but absent further legislative direction, it is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance.” Salman, 378 F.3d at 1269. As noted, Rule 13.5(c), Ala. R.Crim. P., is not as expansive in scope as the various components of Rule 12(b), Fed.R.Crim.P., and the trial court’s authority to dismiss an indictment is therefore more circumscribed. I conclude that Rule 13.5(c)(1) does not empower a trial judge to take the action taken here because, looking only to the face of the 10 counts of the indictment, it cannot be said *428 that the 5 felony counts manifest a legal insufficiency or fail to charge an offense.[9]

. Worley argues in her brief that the State cannot rely on that portion of § 17— 1 —7(b) that criminalizes the use of official authority or position for the purpose of influencing the vote of any person, because that feature of § 17 — 1—7(b) "is not even properly part of the charges in this case. The grand jury did not indict Secretary of State Worley for allegedly influencing employees' votes.” (Worley's brief, p. 40.) The text of the five felony counts of the indictment is set out in full in the main opinion, and whatever might be the merit of Worley’s argument concerning whether an improper attempt to influence votes is charged, that contention was not before the trial court, was not referenced in any way by the trial court in its written order, and, consequently, is not before this court. The motion to dismiss filed by Worley did not raise that point in any fashion (C. 47-50); it was not alluded to in any fashion during the two hearings conducted by the trial court on the dismissal motion (R. 6-39, 40-48); and the trial court’s order does not take any note of it. To the contrary, at one point the trial court evidenced its understanding that influencing a vote was implicated, by stating: "Telling a politician they can’t influence someone's vote is like telling most people they can’t go out and breathe. I don’t know how you separate the two.” (R. 36.)