# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60661

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2016

Lyle W. Cayce
Clerk

SAMUEL GOMEZ,
   Also Known as Samuel Martinez Gomez, Also Known as Samuel Martinez,

Petitioner,

versus

LORETTA LYNCH, U.S. Attorney General,

Respondent.

Petition for Review of Orders of
the Board of Immigration Appeals

Before DAVIS, SMITH, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Samuel Gomez petitioned for review of two orders of the Board of Immigration Appeals ("BIA") finding him ineligible for adjustment of status, ordering his removal, and denying his motion to reopen. We issued an opinion affirming the BIA's factual determination that Gomez had not been lawfully admitted into the United States and was therefore ineligible for adjustment of status and was removable as an inadmissible alien. We granted the parties'

No. 14-60661

joint motion to withdraw that opinion and, after considering the new evidence and supplemental briefing, we grant the petition for review and remand.

I.

Gomez, a citizen of El Salvador, entered the United States without admission or parole in the early 1980s. He was granted temporary resident status by applying for amnesty under the Immigration Reform and Control Act of 1986 and was given a one-year temporary resident card in May 1992 (expiring May 1993). In 2005, his application for asylum was denied, but he received temporary protected status ("TPS"), which expired in 2009, and his application for renewal was denied.

In June 2010, Gomez was served with a notice to appear charging removability as an alien present without admission or parole in violation of 8 U.S.C. § 1182(a)(6)(A)(i). He sought an adjustment of status under Section 245(a) of the Immigration and Nationality Act ("INA"), which provides that, at the discretion of the Attorney General, an alien lawfully inspected and admitted or paroled into the United States may have his status adjusted to that of an alien lawfully admitted for permanent residence (subject to certain requirements not relevant here). *See* 8 U.S.C. § 1255(a).

An immigration judge ("IJ") held an evidentiary hearing to determine whether Gomez was eligible for adjustment. The main issue was whether he had ever been lawfully admitted. He produced evidence that he had traveled to El Salvador in 1993 and returned on a flight to Houston. He claimed that he had been inspected and admitted at the airport's immigration checkpoint in the ordinary course, but he had no immigration documents to support that assertion. The government submitted Gomez's TPS applications, on which he represented that he had most recently entered the United States without inspection at an immigration checkpoint. Gomez claimed that he had

2

misunderstood the forms, which he thought required him to indicate how he had *initially* entered the United States in the 1980s.

After the hearing, the government successfully moved to pretermit the application for adjustment of status. The IJ determined that Gomez was not eligible for an adjustment. First, the IJ said that Gomez had not satisfied his burden of showing that he was ever lawfully admitted. And second, the IJ reasoned that, even if Gomez had been lawfully admitted in 1993 as he claimed, expiration of his status as a temporary resident would have terminated the legal effect of that admission under 8 C.F.R. § 245a.2(u)(4) (the regulation governing the expiration of temporary resident status under the 1986 amnesty). At a later hearing, the IJ ordered Gomez removed to El Salvador.

The BIA affirmed both of the IJ's rulings. Gomez filed a motion to reopen, which the BIA also denied. Gomez petitioned timely for review. After briefing and oral argument, we issued an opinion affirming the BIA's factual determination that Gomez was never lawfully admitted. We therefore did not reach the agency's legal determination that, even if Gomez *had* been lawfully admitted in 1993, the expiration of his temporary resident status rendered that admission nugatory.

The parties jointly moved to vacate. After representing throughout the litigation that there was no record of Gomez's purported 1993 admission (and asserting at oral argument that records from the relevant time period did not exist *at all*), the government reversed course. Now, it informs us, by letter, that it has located records confirming that Gomez *was* in fact processed normally through a Houston immigration checkpoint in 1993. We granted the motion to vacate and accepted supplemental briefing on the proper interpretation and application of Section 245a.2(u)(4). In its supplemental brief, the government explicitly concedes that Gomez was admitted in 1993. The only

No. 14-60661

basis on which it defends the BIA's order is that the regulation renders that admission legally ineffective. Thus, the question is whether the regulation's language stating that Gomez returned "to the unlawful status held prior to" his adjustment to temporary resident status undoes Gomez's 1993 admission.

## II.

Ordinarily, we review the BIA's legal conclusions *de novo*. *Rodriguez-Avalos v. Holder*, 788 F.3d 444, 448 (5th Cir. 2015) (per curiam). But the BIA is entitled to significant deference when it interprets its own ambiguous regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997). That is so even when the agency interprets an immigration regulation in a single-member, non-precedential opinion.[1]    *Auer* deference is typically strong; the agency's

---

[1] *See Corzo-Rodriguez v. Holder,* 559 F. App'x 358, 362 (5th Cir. 2014) (per curiam) (applying *Auer* deference to BIA's nonprecedential interpretation of ambiguous regulation); *Belt v. EmCare, Inc.*, 444 F.3d 403, 415–16 (5th Cir. 2006) (applying *Auer* deference to informal Department of Labor regulatory interpretations contained in a nonbinding opinion letter, a Field Operations Handbook, and an *amicus curiae* brief); *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675 (5th Cir. 2003) (finding the BIA's interpretation "reasonable"). Whether nonprecedential BIA regulatory interpretations receive *Auer* deference is a matter of some dispute among the courts of appeals. *See generally Gourzong v. Attorney Gen.*, No. 15-2645, 2016 WL 3254900, at *3 & n.2 (3d Cir. June 14, 2016) (noting that the standard of review is unsettled and collecting cases).

One circuit has also distinguished the level of deference owed to the BIA's interpretations of immigration regulations promulgated by the Department of Homeland Security and the Department of Justice, noting that the BIA is part of the latter. *See L.D.G. v. Holder*, 744 F.3d 1022, 1028–29 (7th Cir. 2014). We do not need to decide the importance of that distinction, because Section 245a.2 was promulgated by the Department of Justice.

The Second and Eighth Circuits apply *Auer* to such decisions without comment. *See Mansour v. Holder*, 739 F.3d 412, 414 (8th Cir. 2014); *Linares Huarcaya v. Mukasey*, 550 F.3d 224, 229 (2d Cir. 2008). The Seventh Circuit appears to disagree; it has stated in *dictum* that regulatory interpretations in single-member, nonprecedential opinions do not merit full-bore *Auer* deference, but it has not decided what sort of deference (if any) they *are* entitled to. *See Joseph v. Holder*, 579 F.3d 827, 832, 833–35 (7th Cir. 2009). The Ninth Circuit refuses to apply *Auer*, reasoning that nonprecedential interpretations (and especially those in single-member opinions) are by definition not the sort of considered, expertise-driven agency judgment that merits deference. *See Lezama-Garcia v. Holder*, 666 F.3d 518, 532 (9th Cir. 2011). But that view has come under significant criticism. *See Lezama-Garcia*, 666 F.3d at 538 (Rawlinson, J., dissenting); *Go v. Holder*, 744 F.3d 604, 610 (9th Cir. 2014) (Wallace, J.,

interpretations, even if relatively informal (as in this nonprecedential, single-member BIA opinion), are given "controlling weight . . . ."[2]  But deference is "unwarranted when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question[,]'" as where "the agency's interpretation conflicts with a prior interpretation." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166–67 (2012) (quoting *Auer*, 519 U.S. at 462).

Thus, to decide how to approach the interpretive issue, we first must determine whether Section 245a.2(u)(4) is ambiguous.  If it is, we must decide whether the BIA's interpretation of it here represents its fair and considered judgment regarding the proper interpretation.  If it is the agency's fair and considered judgment, we must declare whether the agency's interpretation is a reasonable one.

Although we conclude that the regulation is ambiguous, deference here is inappropriate because the BIA's interpretation of this regulation has not been consistent.  Therefore, we do not continue to the third step of the *Auer* inquiry but instead interpret the regulation *de novo*.

Surprisingly, the government did not brief any arguments invoking or analyzing *Auer* deference.  Instead, it urges only *Skidmore* deference, under which we defer to an agency's interpretation merely for its persuasive power: its "thoroughness evident in its consideration, the validity of its reasoning, its

---

concurring) (criticizing *Lezama-Garcia*).

    We do not write on a blank slate.  In *Belt*, we held that *Auer* was the proper lens through which to review similarly informal agency regulatory interpretations, and we are unaware of any meaningful distinction between that case and this one.

    [2] *See Belt*, 444 F.3d at 415; *see also Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 78 (2d Cir. 2009) (noting that *Auer* applies to an agency's interpretation of its own regulations "regardless of the formality of the procedures used to formulate it").

consistency with earlier and later pronouncements," and the like. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *Skidmore* calls for significantly less deferential review than does *Auer*. Under *Auer*, an agency's interpretation of its own ambiguous regulation is typically given "controlling weight," while *Skidmore* demands only that we pay respectful attention to the agency's interpretation. *Belt*, 444 F.3d at 416.

The government's failure to brief the more deferential *Auer* standard apparently stems from its reliance on language in *Rodriguez-Avalos*, 788 F.3d at 449 & n.8. There, we stated that *Chevron*[3] deference applies when we review the BIA's "interpretation of the statutes *and regulations* it administers when its interpretations are precedential . . . ." *Id.* at 449 (emphasis added). "Comparatively, when examining the BIA's interpretation of an ambiguous provision of a statute it administers that was rendered in a non-precedential BIA decision, we use the standard announced in *Skidmore* . . . ." *Id.* at 449 n.8.

The first statement is inexact, because regulatory interpretations in precedential agency rulings receive *Auer*, not *Chevron*, deference.[4] The second statement, from the footnote, is strictly correct but could be read, in context, as suggesting that *Skidmore* deference applies to agency *regulatory* interpretations issued in nonprecedential opinions. Our caselaw does not support that possible reading. We have applied *Auer* deference to a variety of relatively informal agency determinations, including those in opinion letters, agency operating handbooks, and litigation briefs. *See Belt*, 444 F.3d at 415.

Despite the government's choice to claim only *Skidmore* deference, "it is

---

[3] *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

[4] *See Gonzales v. Oregon*, 546 U.S. 243, 255 (2006) (explaining that *Chevron* deference applies when courts review agency statutory interpretations, and *Auer* deference applies when courts review agency regulatory interpretations).

No. 14-60661

this court, and not the parties, that must determine the appropriate standard of review."[5] The difference is immaterial here, however, because we decline to defer to the agency interpretation under even the more forgiving standard.

A.

We find 8 C.F.R. § 245a.2(u)(4) ambiguous. It reads as follows:

Return to unlawful status after termination. Termination of the status of any alien previously adjusted to lawful temporary residence under section 245A(a) of the Act shall act to return such alien to the unlawful status held prior to the adjustment, and render him or her amenable to exclusion or deportation proceedings under section 236 or 242 of the Act, as appropriate.

The regulation is ambiguous because the meaning of the phrase "return such alien to the unlawful status held prior to the adjustment" is opaque. It is not obvious whether the "unlawful status" to which an alien returns encompasses his lack of a lawful admission at the time he adjusted to temporary resident status. Indeed, the regulation does not mention admission at all.

Further, despite its centrality in modern immigration law, the term "status" is not defined in the relevant statutes or regulations. *See Tula Rubio v. Lynch*, 787 F.3d 288, 293 (5th Cir. 2015). And as Gomez reminds us, status and admission are, at least in many applications, distinct concepts in immigration law. A person can be in unlawful status despite a valid admission (as when a tourist overstays his visa). And a person can be admitted without any legal entitlement to be present in the country. *Matter of Quilantan*, 25 I. & N. Dec. 285, 290–91 (BIA 2010). Thus, the plain text of the regulation does not answer the question whether the expiration of Gomez's temporary resident

---

[5] *United States v. Torres-Perez*, 777 F.3d 764, 766 (5th Cir. 2015) (citing *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc)); *United States v. Sanchez-Rodriguez*, No. 15-41056, 2016 U.S. App. LEXIS 12628, at *4–5 (5th Cir. July 8, 2016) (per curiam) (unpublished).

No. 14-60661

status undid the legal effect of his 1993 admission, thereby rendering him ineligible for adjustment of status. The regulation is ambiguous.

B.

Because the regulation is ambiguous, we have to determine whether the BIA's opinion represents the agency's considered judgment of how it should be interpreted. That is not a hard standard to satisfy—the Supreme Court and this circuit have blessed a wide variety of fairly casual agency pronouncements. But the Supreme Court has specifically warned that deference is improper where there is a strong reason to believe that the agency's interpretation is *not* in fact an expression of its considered judgment, and inconsistencies in the agency's interpretive pronouncements are sufficient reason so to believe. *See Christopher*, 132 S. Ct. at 2166–67.

The BIA's interpretation of Section 245a.2(u)(4) has not been consistent. In *In re Castro Valdez*, 2012 WL 3911586, at *3 (BIA Aug. 13, 2012), the agency reached a contrary result on nearly identical facts. The alien entered without inspection but was granted temporary resident status during the amnesty. While a temporary resident, he departed the United States and, upon return, was admitted as a lawful temporary resident. Later, his application for permanent residency was denied, and he lost his temporary-resident status. *Id.* The Attorney General initiated removal proceedings, claiming that the petitioner was inadmissible as an alien present without admission or parole. *Id.* The IJ rejected that theory because it found that the alien *had* in fact been lawfully admitted after his trip out of the United States. *Id.* at *2.

On appeal to the BIA, the government urged that the IJ had erred, because Section 245a.2(u)(4) meant that expiration of temporary resident status nullified the legal effect of the admission that the alien had obtained as a result of that status. *Id.* at *2–3. The BIA rejected that argument, reasoning,

No. 14-60661

as Gomez does here, that the alien's return to his previous unlawful status did not alter the fact that he had been admitted. *Id.* at \*3. It therefore affirmed the IJ's decision to terminate the removal proceeding. *Id.*

Thus, in a nearly identical case, the BIA interpreted the regulation in precisely the opposite fashion from how it does now. Those contradictory interpretations show that its current litigation position does not represent the agency's considered and expertise-driven judgment as to the correct reading of Section 245a.2(u)(4). Therefore, following *Christopher*, we decline to defer to the agency's proposed interpretation and, instead, review it *de novo*.

## III.

The BIA erred in interpreting 8 C.F.R. § 245a.2(u)(4). The government says that the regulation means that Gomez returned to his previous status and that his previous status was "present without admission." Gomez disagrees, reasoning that there is no such status. By his account, admission and status are fundamentally different concepts, and a return to his previous unlawful *status* would not affect his 1993 *admission*. Rather, returning to unlawful status means only that he no longer had affirmative permission to be in the United States.

To resolve this dispute, we must determine what it means for Gomez to return to his previous unlawful status. Gomez is correct: His return to unlawful status had no effect on his 1993 admission. That is because there are no fine-grained distinctions between and among various forms of unlawful status, so there is no status of "present without admission" to which Gomez could return.

## A.

Admission and status are fundamentally distinct concepts. Admission is

9

an occurrence, defined in wholly factual and procedural terms:  An individual who presents himself at an immigration checkpoint, undergoes a procedurally regular inspection, and is given permission to enter has been admitted, regardless of whether he had any underlying legal right to do so.  *Quilantan*, 25 I. & N. at 290–91.  Status, by contrast, usually describes the type of permission to be present in the United States that an individual has.  *See* STEEL ON IMMIGRATION LAW §§ 2:23, 3:1 (2015 ed.).

Thus, aliens who enter lawfully have 'immigrant' or 'nonimmigrant' status and have various subsidiary descriptions within those categories, depending on their specific characteristics.[6]  In contrast to the INA's extensive enumeration of different types of legal presence in the United States,[7] there is no analogous enumeration of different categories of illegal presence—those illegally present are just "without status" or in "unlawful status."[8]  Those phrases mean only that the alien lacks permission to be present.

Because the concepts are separate, an alien can be admitted despite the absence of any lawful status, as when an immigration officer accidentally processes him through a checkpoint.  Or an alien who was admitted in a lawful status can acquire unlawful status, as by overstaying a visa—but that does not mean he was never admitted.  Conversely, an alien can have lawful status without any factual admission at all.[9]

---

[6] *See* STEEL, § 3:1 ("Persons in the United States can generally be divided into seven categories: citizens; nationals; permanent resident aliens; temporary residents; asylees and refugees; nonimmigrants; and persons without legal status.").

[7] *See, e.g.*, 8 U.S.C. § 1101(a)(15) (defining immigrant status as any alien not included in a lengthy list of nonimmigrant-status categories).

[8] *See* note 5, *supra*.

[9] In some rare cases, a status adjustment is treated as an admission.  This category of legally fictional admissions is the exception to the general rule that "admission" is a procedural event.  *See United States v. Hernandez-Arias*, 757 F.3d 874, 880 (9th Cir. 2014).

No. 14-60661

To be clear, lack of admission can *cause* an alien to be in unlawful status, but it is not *part* of that unlawful status such that reversion would undo a later admission.[10]  The alien's "unlawful status" is just his lack of permission to be present.  There is no sub-category of unlawful status called "present without admission," and the government's protestation to the contrary is not backed by any citation to apt authority.[11]

Past decisions and our review of the statutory scheme confirm this view. Our decisions and those of the BIA regularly distinguish among different types of lawful status[12] but not among various types of unlawful status.[13]  Nor does

---

[10] Status similarly does not encompass work authorization—an alien can be in lawful status but lack work authorization, or be in unlawful status but possess valid work authorization.  *Bokhari v. Holder*, 622 F.3d 357, 360 (5th Cir. 2010).

[11] In its supplemental brief, the government provides—for the first time—a citation for the proposition that Gomez's *status* was "present in the United States without being admitted or paroled."  But the government's authorities are unpersuasive.  First, it cites 8 U.S.C. § 1182(a)(6)(A)(i), a statute describing presence without admission as a ground of inadmissibility.  But nothing there suggests that grounds of inadmissibility are statuses.  Nor does the government point us to any authority that suggests that they are.  For the reasons described below, they are not statuses.

Second, the government cites the concurring opinion in *Hernandez-Arias*, 757 F.3d at 885, in which he claims that "[t]he statutory phrase 'present in the United States without being admitted or paroled' describes a status . . . ."  We respectfully disagree: The concurrence cites only the same inadmissibility statute that the government relies on here.  His assertion that this ground of inadmissibility is a status is not backed by authority, and he offers no reasoning.

[12] *See, e.g., Texas v. United States,* 787 F.3d 733, 759 & n.76 (5th Cir.2015) ("The INA expressly identifies legal designations allowing defined classes of aliens to reside lawfully in the United States...."); *Dhuka v. Holder*, 716 F.3d 149, 151 (5th Cir. 2013) (distinguishing among different forms of nonimmigrant status); *In Re Blancas-Lara*, 23 I. & N. Dec. 458, 460 (BIA 2002) ("'Status' is a term of art . . . .  It denotes someone who possesses a certain legal standing, e.g., classification as an immigrant or nonimmigrant."); *Matter of Rotimi,* 24 I. & N. Dec. 567, 576 (BIA 2008) ("Ordinarily, we would expect the privilege of residing in this country to be reflected in a recognized status such as that of nonimmigrant, refugee, or asylee, each of which is set out in the statute.").

[13] *E.g.*, *Sattani v. Holder*, 749 F.3d 368, 372 (5th Cir. 2014) (stating without additional discussion that petitioner was in "unlawful status" and sought to adjust to lawful status); *United States v. Elrawy*, 448 F.3d 309, 313 (5th Cir. 2006) (stating that the alien "acquired illegal or unlawful status when he remained in the United States after the expiration of the

No. 14-60661

the statutory scheme discriminate among forms of unlawful status.[14] The INA refers to "immigrant status" and "nonimmigrant status," as well as numerous sub-categories of each, thereby contrasting different types of lawful presence; instances of the term "unlawful status," however, are limited to those bare words. *See Tula Rubio*, 787 F.3d at 295 & n.6 (collecting examples).

The statute does describe "classes of deportable aliens," *see* 8 U.S.C. § 1227, and "classes of aliens ineligible for visas or admission," *see id.* § 1182, but neither *Tula Rubio* nor any other decision refers to or treats those grounds for deportability or inadmissibility as statuses. Further, the regulation treats unlawful status on the one hand, and excludability and deportability on the other, as distinct concepts. It operates to "return such alien to the unlawful status held prior to the adjustment, *and* render him or her amenable to exclusion or deportation proceedings under section 236 or 242 of the Act, as appropriate." 8 C.F.R. § 245a.2(u)(4) (emphasis added).

If a ground for removability were equivalent to a specific form of unlawful status, the regulation would not have needed separately to specify those results.[15] The canon against surplusage thus supports our view that status does not encompass admission.

---

authorized stay" and that he "acquired unlawful status on account of his overstay" but not further specifying any specific sort of unlawful status).

[14] *Tula Rubio* is not to the contrary. There, we held, as a matter of first impression, that "unlawful status" is a status in the same way that "immigrant status" or "nonimmigrant status" is. *See Tula Rubio*, 787 F.3d at 293. But *Tula Rubio* stopped there—nothing in the opinion supports the idea that there are sub-categories of unlawful status in the same way that there are sub-categories of lawful status. And that is what the government would have to show to demonstrate that Gomez's previous status *encompassed* his lack of admission.

[15] Furthermore, an alien who, during the pendency of his application for temporary protective status, was specifically shielded by statute from deportation is nonetheless in unlawful status. *See United States v. Flores*, 404 F.3d 320, 327 (5th Cir. 2005). Thus, removability cannot be the touchstone for specifying sub-categories of unlawful status.

No. 14-60661

Moreover, as Gomez aptly points out, 8 U.S.C. § 1255, the adjustment-of-status statute, tracks the admission/status distinction.  That section treats lack of admission and unlawful status as separate bars to adjustment of status, subject to different exceptions, and addressed in separate subsections.  Section 1255(a) indicates that admission is in most cases a prerequisite to applying for adjustment of status.  But an alien classified as a self-petitioner under the Violence Against Women Act need not have been admitted.  *Id.*

Unlawful status is treated in a different statutory subsection, § 1255(c)(2), which provides that an alien "who is in unlawful immigration status on the date of filing the application for adjustment of status" is ineligible for an adjustment.  That rule is subject, however, to exceptions for immediate relatives of citizens and certain other special immigrants.  The government's conflation of admission and status would render redundant the separate articulation of those two grounds for ineligibility and would undo Congress's careful calibration of different exceptions for the two separate factors.

B.

The government argues that *Hernandez-Arias* supports its interpretation and that we should follow our sister court's decision as persuasive authority.  By its own terms, however, that case is inapposite.

*Hernandez-Arias* involved a collateral challenge to a deportation as part of an appeal of a conviction; the defendant claimed he was not properly removable as charged.  Like Gomez, he been granted temporary status but never permanent status under the amnesty.  Although he had never been inspected and admitted at a port of entry, he maintained that his adjustment to temporary status constituted an admission, so he was not removable as charged as an alien present without being admitted or paroled.  *Hernandez-Arias*, 757 F.3d at 880.  The Ninth Circuit noted that, in certain circumstances, the concept of

admission was not limited to the procedural event described earlier in our discussion. *Id.* Rather, in select circumstances, admission will be imputed or deemed by operation of law—for example, when an alien is accepted into the Family Unity Program or receives an adjustment to lawful permanent residence, he is deemed admitted by operation of law regardless of whether he was ever physically admitted at a port of entry. *Id.*

The Ninth Circuit assumed, for the sake of argument, that adjustment to temporary resident status under the amnesty was among the circumstances in which an alien would be deemed admitted by operation of law. *Id.* at 881. Nonetheless it rejected the alien's claim, reasoning that a deemed admission by operation of law resulting purely from an adjustment to temporary lawful status would expire upon the expiration of the status adjustment. *Id.* On the Ninth Circuit's reasoning, 8 C.F.R. § 245a.2(u)(4) meant that, upon expiration of temporary residency, the legal fiction of admission that was derived from the temporary-resident status was undone. *Hernandez-Arias*, 757 F.3d at 881.

Gomez posits that *Hernandez-Arias* is distinguishable. He notes that the opinion, by its explicit terms, deals only with the narrow case of unusual circumstances under which a change in one's status under the immigration laws is treated as a deemed admission by operation of law. *See id.* at 881 n.3. On Gomez's account, the Ninth Circuit's careful effort to confine its decision to those rare instances of admission by operation of law supports the idea that the regulation could not undo the effect of a factual port-of-entry admission. In other words, Gomez concedes that any fictional, deemed admission that occurred by operation of law when he was adjusted to temporary resident status was undone by the expiration of that status, but he reasons that that does not matter: He was legally entitled to be admitted, and was in fact admitted, during his temporary residency.

We agree. *Hernandez-Arias* has no application here, for the reason Gomez identifies: There is nothing in the opinion that supports ignoring the historical fact of a port-of-entry admission that occurred during the period of time when an alien was a temporary resident. The type of deemed admission at issue in *Hernandez-Arias* would logically expire at the termination of a temporary residency, because the only reason why courts sometimes treat certain changes of status as deemed admissions is to avoid the oddities that would accompany treating an alien accepted into Family Unity Program, or given lawful permanent resident status, as unadmitted (which would render him subject to removal and a variety of other sanctions plainly incompatible with his status under those programs). *See id.* at 880. When an alien's adjusted status expires, and he is no longer entitled to privileges inconsistent with non-admission, it no longer makes sense to imply, legally, a fictitious admission from the adjustment, because there are no longer any absurd results.

Thus, *Hernandez-Arias*'s holding makes good sense, but that decision establishes nothing at all regarding a *factual* admission that occurs during a period of time that the alien is legally entitled to exit and reenter the United States, and its logic does not encompass such an admission. And, as the government acknowledges, Gomez was entirely free to leave the country for short periods of time and could be "admitted" on his return. *Hernandez-Arias* is materially distinct, so we decline the government's invitation to treat it as relevant, persuasive authority.

The BIA has observed precisely the distinction that we describe here and has reached results that that distinction suggests. The previous decisions involving 8 C.F.R. § 245a.2(u)(4) that the government relies on follow the fact pattern from *Hernandez-Arias*, not the fact pattern from *Castro Valdez* and the instant case. That is, the aliens relied only on the fictional, deemed admission

No. 14-60661

resulting from their adjustment to temporary resident status, not a factual admission that took place during their temporary residency.[16] In the only BIA case cited by either party in which the alien relied on a factual admission at a port of entry, rather than the fictional admission that occurred when he adjusted to temporary resident status, the BIA held that that admission was not affected by Section 245a.2(u)(4). *See Castro Valdez*, 2012 WL 3911586, at *3.

IV.

In summary, the language in 8 C.F.R. § 245a.2(u)(4) that provides for an alien to return to a previous unlawful *status* does not also undo a factual *admission* that occurred during the time when he was in lawful status. That is because his unlawful status does not encompass his lack of admission. Upon expiration of his temporary resident status, Gomez returned to his previous unlawful status (that is, he lost his permission to be present in the United States). But that does not change the historical fact that he had been admitted.

Because Gomez was admitted, and the regulation does not undo that admission, the petition for review is GRANTED, and this matter is REMANDED for proceedings as needed. We express no view on what actions the BIA should take on remand.

---

[16] *See Matter of Mujica*, 2015 WL 5173569, at *1 (BIA Aug. 28, 2015) ("The respondent argued that, although he initially entered the United States without inspection or authorization, he was granted the status of temporary resident in 1988, and that this grant constituted an 'admission,' rendering him eligible for adjustment of status . . . ."); *Matter of Osorio*, 2015 WL 4537062, at *1 (BIA June 12, 2015) ("On appeal, the respondent contends that he is not inadmissible under section 212(a)(6)(A)(i) because his grant of temporary resident status was an 'admission' . . . ."); *Matter of Aine*, 2015 WL 3896288, at *3 (BIA May 28, 2015) ("The respondent asserts that he is not subject to charges of inadmissibility under section 212 of the Act because his grant of temporary resident status was an 'admission' . . . .").