# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2017

Lyle W. Cayce
Clerk

No. 16-10310

―――――――――

BAYLOR COUNTY HOSPITAL DISTRICT, doing business as Seymour Hospital,

Plaintiff - Appellant

v.

THOMAS PRICE, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Defendant - Appellee

―――――――――――――――

Appeal from the United States District Court
for the Northern District of Texas

―――――――――――――――

Before JONES, BARKSDALE, and COSTA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In 1997, Congress created a favorable Medicare reimbursement schedule for rural facilities designated as "critical access hospitals." 42 U.S.C. §§ 1395i-4, 1395f. A critical access hospital is defined in part by the type of roads that connect the facility to the next nearest hospital. Congress used the term "secondary roads" in the definition, but it neither defined that term nor contrasted it with "primary roads." To fill that gap, an agency within the Department of Health and Human Services (DHHS) issued a manual that defines "primary roads" as, *inter alia*, numbered federal highways and defines "secondary roads" as non-primary roads. Appellant Baylor County Hospital District d/b/a Seymour Hospital (Seymour), located in Seymour, Texas,

No. 16-10310

challenges DHHS's decision, founded on the manual, that it is not a critical access hospital. The district court, in a thorough and thoughtful opinion, granted DHHS's motion for summary judgment. We accord *Skidmore* deference, find nothing arbitrary or capricious in the agency's decisionmaking, and **AFFIRM**.

## I.     BACKGROUND

For 20 years, the Medicare Rural Hospital Flexibility Program has provided a special reimbursement scheme for certain rural facilities that serve Medicare beneficiaries. *See generally* 42 U.S.C. §§ 1395i-4, 1395f. These "critical access hospitals," *id.* § 1395f(l)(1), must meet several criteria, including geographical, staffing, and services requirements. *See id.* § 1395i-4(c)(2)(B). At issue in this case is the geographical requirement measured by a facility's distance from another hospital and the types of roads available to travel that distance:

> A State may designate a facility as a critical access hospital if the facility . . . is a hospital that . . . is located more than a 35-mile drive (or . . . in areas with only secondary roads available, a 15-mile drive) from a hospital, or another facility described in this subsection[.]

*Id.* § 1395i-4(c)(2)(B)(i)(I). Within that criterion, Congress created two standards—a 15-mile standard if "only secondary roads [are] available" between facilities, and a 35-mile default standard if roads other than secondary roads are available. Despite the reference to "secondary roads," Congress defined neither that term nor its comparator, "primary roads." The implementing regulations are similarly blank. *See* 42 C.F.R. § 485.610(c).

To remedy the lack of formally binding definitions, the Centers for Medicare and Medicaid Services (CMS), the agency within DHHS charged with administering Medicare, issued "guidance" in a State Operations Manual (the Manual). The Manual explains that a facility falls within the "secondary

2

No. 16-10310

roads" provision when "there are more than 15 miles between the [facility] and any hospital or other [critical access hospital] where there are no primary roads." The Manual then articulates three types of "primary roads:"

1. A numbered federal highway, including interstates, intrastates, expressways or any other numbered federal highway;

2. A numbered state highway with 2 or more lanes each way; and

3. A road shown on a map prepared in accordance with the U.S. Geological Survey's Federal Geographic Data Committee (FGDC) Digital Cartographic Standard for Geologic Map Symbolization as a "primary highway, divided by median strip."

CMS, State Operations Manual, ch. 2, §2256A. The end result is that to qualify under the "secondary roads" provision, a facility must be separated from the nearest hospital by more than 15 miles in which there is no primary road—a numbered federal highway, a numbered state highway with two or more lanes each way, or a road shown on a particular map as a "primary highway, divided by median strip."

In 2013, Seymour applied to CMS for designation as a critical access hospital. The nearest hospital is located 31.8 miles away in Throckmorton, Texas. Approximately 28.4 miles of the road directly connecting the small towns of Seymour and Throckmorton are designated as U.S. Highway 183/283, rendering that 28.4-mile stretch a "primary road" under the "numbered federal highway" provision in the Manual. U.S. Highway 183/283 is designated a "Primary Highway," "Principal Highway," and "Major Road" by official sources such as the U.S. Geological Survey and the Texas Department of Transportation. Seymour does not satisfy the alternate 35-mile standard because Seymour lies less than 35 miles away from Throckmorton. But Seymour also fails to qualify under the "secondary roads" provision because for only approximately three miles (31.8 miles minus 28.4 miles) of the distance between Seymour and the Throckmorton hospital are "only secondary roads []

3

available"—well short of the 15-mile "secondary road" threshold.    CMS rejected  Seymour's application based on the plain language of the "guidance."

Seymour then requested a hearing from an administrative law judge (ALJ), "disput[ing] the validity of CMS' determination and the rationale for it." Seymour asserted that U.S. Highway 183/283 is a secondary road because it "is a two lane rural road," has "no shoulders," and its "dimension and condition" are those "of a poor quality farm road."    Seymour acknowledged that its characterization of U.S. Highway 183/283 as a secondary road conflicted with the "numbered federal highway" provision in the Manual, but Seymour dismissed the Manual as "only guidance," "not controlling," and "not law." Seymour additionally challenged the "numbered federal highway" provision as "unreasonable, arbitrary and capricious."

Applying the Manual, the ALJ rejected Seymour's position.  The ALJ found that the Manual was entitled to "considerable deference" and "justified in this case by practical considerations," such as CMS's "lack [of] resources and capacity for making case-by-case judgments about the driving characteristics of every stretch of highway in the United States."  Further, the ALJ stated that "making a policy determination that a numbered United States Highway is a 'primary road' not only makes sense, but it may be the only reasonably objective way, along with the other criteria listed in the [Manual], of determining what is 'primary' and what is 'secondary.'"

The DHHS Department of Appeals Board affirmed, holding

CMS's interpretation provides a bright-line for what constitutes a primary road, based on objective criteria.  CMS could reasonably assume that federal highways are likely to be bigger, better-maintained, and more well-traveled than state highways, and that state highways are more likely to have those characteristics than undesignated roads.  Given those general expectations, CMS could reasonably require that state highways and undesignated roads be treated as equivalent to federal highways only when they

demonstrated specific characteristics typical of most federal highways. Thus, CMS's decision to categorize as primary roads all federal highways, but only state highways with two or more lanes in each direction, and only "primary highways" divided by a median strip, is reasonable.

The Board emphasized that "CMS was not required to conduct case-by-case surveys of all the characteristics and traffic patterns of each stretch of road connecting two rural hospitals." According to the Board, "[a]dministrative efficiency justified developing a bright-line rule that would balance the goals [of the Program] without individual inquiry into each case."

Seymour sought judicial review of the Board's decision, and the district court, in turn, granted summary judgment for DHHS, "find[ing] that the *Skidmore* [*v. Swift & Co.*, 323 U.S. 134 (1944)] factors counsel the Court to grant deference to the Secretary's final decision, as it is supported by substantial evidence and lacks any clear error of law." Seymour appeals, arguing that *Skidmore* deference is unwarranted and DHHS's final decision is arbitrary and capricious. (Seymour concedes that the decision is factually consistent with the Manual's definition of "primary roads.")

## II.    ANALYSIS

### A. Standard of Review

This court reviews a grant of summary judgment *de novo*, applying the same standard to review the agency's decision that the district court used. *E.g.*, *Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 379 (5th Cir. 2008). But the parties dispute the nature of that standard of review. Seymour advocates arbitrary and capricious review under the Administrative Procedure Act (APA). *See* 5 U.S.C. § 706(2)(A) (requiring a reviewing court to hold unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

No. 16-10310

Seymour also urges us to deny *Skidmore* deference to the Manual's "numbered federal highway" provision.

For its part, DHHS relies on section 405(g) of the Social Security Act, which authorized judicial review in this case. *See* 42 U.S.C. § 1395cc(h) (citing 42 U.S.C. § 405(g)). Section 405(g) states in relevant part that "[t]he findings of [DHHS] as to any fact, if supported by substantial evidence, shall be conclusive[.]" *Id.* § 405(g). Quoting *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000), which ruled on the appeal of an individual Medicare claimant, DHHS contends that our review under section 405(g) "is limited to two issues: (1) whether [DHHS] applied the proper legal standards; and (2) whether [DHHS's] decision is supported by substantial evidence on the record as a whole." But DHHS also contends that it would prevail even under the arbitrary and capricious standard of review that Seymour prefers. Although it probably makes no difference, we assume only for the sake of argument that the APA's arbitrary and capricious standard applies.

Beyond that baseline, this court accords *Skidmore* deference to "agency interpretations of statutes they administer that do not carry the force of law[.]" *Luminant Gen. Co., L.L.C. v. EPA*, 675 F.3d 917, 928 (5th Cir. 2012) (citing *Skidmore*, 323 U.S. 134, and *United States v. Mead Corp.*, 533 U.S. 218, 234–35 (2001)). The degree of deference depends on "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.[1] Framed in

---

[1] Reflecting widespread uncertainty over the standards of review for informal rulemaking activities of administrative agencies, DHHS argued in the trial court that both *Skidmore* deference and *Chevron* deference should apply to the Manual's informal but intended-to-be-decisive "guidance" interpreting "secondary" and "primary" roads. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The trial court rejected DHHS's *Chevron* argument but accorded deference anyway according to the

No. 16-10310

*Skidmore* terms, the issues before us are how persuasively CMS interpreted the statute in contrasting primary and secondary roads and whether the DHHS decision against Seymour properly reflects the dichotomy.[2]

We must also note the "distinct but potentially overlapping" relationship between the arbitrary and capricious standard of review and *Skidmore* deference. *Compare Fox v. Clinton*, 684 F.3d 67, 74–75, 80 (D.C. Cir. 2012) (referring to the standards as "distinct but potentially overlapping," then finding an agency's interpretation arbitrary and capricious because of "[t]he same flaws" that made *Skidmore* deference inappropriate), *with Luminant*, 675 F.3d at 928–30 (affording "minimal" *Skidmore* deference to the Environmental Protection Agency's interpretation of the Clean Air Act, but holding the interpretation arbitrary and capricious). According some measure of *Skidmore* deference to an agency's informal action does not assure the action will survive arbitrary and capricious review. Following this court's decision in *Luminant,* we analyze the appeal under both standards.

**B. Discussion**

Whether a facility can be a critical access hospital turns in part on its location "in areas with only secondary roads available." 42 U.S.C. § 1395i-4(c)(2)(B)(i)(I). The term "secondary roads" is ambiguous. Congress did not define it or contrast "primary roads," and the implementing regulations likewise offer no guidance. Dictionary definitions offer little help. For example, one definition of "secondary" is "of less than first value or importance." Webster's Third New International Dictionary 2050 (1961). And

---

*Skidmore* sliding scale. In essence, DHHS has taken three positions, including those noted in text above, concerning the applicable standard.

[2] Ironically, both the ALJ and the Department Appeals Board expressly viewed the Manual's guidance as non-binding but persuasive, yet the consequence of our according *Skidmore* deference is that this court's decision will be binding on federal courts in the Fifth Circuit.

7

a definition of "secondary road" is "a road not of primary importance whose classification and maintenance vary according to township, county, and state regulations." *Id.* at 2051. Thus, the "secondary roads" provision broadly refers to roads having less value or importance than other roads. But what does "lesser value or importance" mean and how does one distinguish between the two types of roads?

The CMS Manual attempted to answer those questions by defining a secondary road as a road that is *not* (1) a numbered federal highway, (2) a numbered state highway with two or more lanes each way, or (3) a road shown on a U.S.G.S. map as a "primary highway, divided by median strip."

### 1. *Skidmore* **Deference**

Seymour focuses on the Manual's statement that no "numbered federal highway" can be a "secondary road" and contends that DHHS's decision based on the Manual should not earn *Skidmore* deference "due to a lack of validity, consistency, and expertise." We consider separately each of these specific complaints.

First, according to Seymour, the "numbered federal highway" provision is invalid because it is "arbitrary and based on irrelevant criteria," and DHHS "has not articulated a sufficient reason for categorizing identical roads differently."

Instead of relying on the arbitrary and irrelevant criteria of U.S. Highway designations, Seymour contends that DHHS should have considered "factors directly impacting a patient's ability to safely and efficiently travel on the roads leading to a hospital." DHHS's decision, however, is not as blinkered as Seymour suggests. To begin, CMS was interpreting the term used in the statutory text ("secondary roads"), whereas Seymour's "factors" approach, while relevant, imprecisely correlates with the statute. Further, DHHS opted for a bright-line rule after considering its lack of agency resources to make

case-by-case judgments about the conditions of every stretch of rural highway in the United States.  DHHS factored in the statutory goal of "increas[ing] [patients'] access to care" and sought to categorize roads to better serve "patients seeking medical care in rural areas."  In sum, the statutory text had to be articulated properly and in an administratively efficient way.  As DHHS put it, the Manual's "numbered federal highway" provision reasonably struck that balance because "federal highways are likely to be bigger, better-maintained, and more well-traveled than state highways[.]"  Moreover, it was reasonable to "require that state highways and undesignated roads be treated as equivalent to federal highways only when they demonstrated specific characteristics typical of most federal highways."  Therefore, DHHS concluded that it was reasonable to "categorize as primary roads all federal highways, but only state highways with two or more lanes in each direction, and only 'primary highways' divided by a median strip[.]"

Far from being arbitrary and irrelevant, DHHS considered more than a road's "alphanumeric designation," as it worked on the premise, supported by several official mapping sources, that numbered federal highways are generally likely to be more suitable for travel than state highways.  DHHS's premise was that ordinarily, federal highways "are likely to be bigger, better-maintained, and more well-traveled than state highways."  Seymour acknowledges that "[t]he intent of Congress was to ensure that areas where travel is generally harder and less efficient . . . are judged by the more appropriate [secondary-road] 15-mile requirement."  DHHS's approach was neither arbitrary nor unreasoned nor did it rely on irrelevant considerations in attempting to fulfill Congressional intent.

Seymour's second invalidity argument is that DHHS "has not articulated a sufficient reason for categorizing identical roads differently." Seymour notes that  U.S. Highway 183/283 would be considered a secondary road pursuant to

the Manual if it were a state highway, because its characteristics—no median strip, no double lanes in each direction—do not fall within the Manual's description of non-federal-highway primary roads. This is a fact-specific quarrel with a general rule. DHHS's decision reflected the general conclusion that federal highways offer superior conditions than state highways. To be sure, as with all bright-line rules, there are undoubtedly cases where the Manual's definitions will treat similarly constructed state and federal highways differently.[3] DHHS's adoption of the Manual's criteria, however, reasonably concluded that differentiating between federal and state highways is valid in the vast majority of cases.

Seymour next argues that DHHS's application of the "numbered federal highway" provision lacks consistency. This assertion is puzzling in light of the two ALJ decisions from within DHHS that Seymour says illustrate arbitrary outcomes under the provision.[4] Both decisions applied the "numbered federal highway" provision in precisely the same way DHHS applied the provision in this case. In addition, there is no evidence that the Manual's "numbered federal highway" provision has ever changed or that DHHS has deviated in its application. This evidence of consistency, and Seymour's lack of evidence showing inconsistency, weigh in favor of according *Skidmore* deference.

---

[3] A similar point may be made about cases such as *Missouri Baptist Hospital—Sullivan v. CMS*, DAB No. CR2384, 2011 WL 2567291 (June 17, 2011), where state legislatures redesignate roads as something other than state highways to render those roads "secondary roads." That legislatures can find a way to perform an end run around DHHS's policy determination of what constitutes primary and secondary roads, however, does not make that policy determination irrational.

[4] *See Mo. Baptist Hosp.—Sullivan v. CMS*, DAB No. CR1987, 2009 WL 3353357 (Aug. 11, 2009); *Mo. Baptist Hosp.—Sullivan v. CMS*, 2011 WL 2567291. Those are not the only ALJ decisions applying the "numbered federal highway" provision consistently. *See Shelby Mem'l Hosp. v. CMS*, DAB No. CR3647, 2015 WL 2452189 (Feb. 11, 2015).

Finally, Seymour argues that DHHS "was not acting within its area of expertise when attempting to classify roads." Seymour contends that "expertise at identifying and classifying roadways is far afield from the agency's core expertise of administering a health care program." DHHS, however, aptly responds that DHHS bears the burden of implementing Medicare's complex programs and regulatory scheme. *See, e.g.*, *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). Within this framework, the activity of "classifying roadways" is intricately intertwined with broader Medicare policies. Congress commissioned DHHS to facilitate rural health care and designated rural facilities' locations (based in part on the use of "secondary roads") as the touchstone for that duty. *See* 42 U.S.C. § 1395i-4(c), (e). We decline to conclude, as Seymour implies, that DHHS's core expertise, as defined by Congress, is administering a rural health care program—except for the "rural" part. DHHS's duty to consider roads connecting facilities in rural areas lies within DHHS's expertise in administering rural health care.

For these reasons, DHHS's interpretation of the "secondary roads" provision is persuasive and entitled to *Skidmore* deference.

## 2. Arbitrary and Capricious Review

Seymour repeats the same arguments in challenging DHHS's decision as arbitrary and capricious, and we reject them for essentially the same reasons. Established law holds that an agency's decision is arbitrary and capricious

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

11

No. 16-10310

*Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  So long as "the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld."  *Id.* at 934.

Seymour argues that DHHS's final decision is arbitrary and capricious because DHHS relied on irrelevant factors, ignored relevant factors, and did not adequately explain its decision.  The arguments have been addressed and rejected above; the same result obtains here.  DHHS could have solved the problem created by Congress's silence in any number of ways, and its choice "conform[s] to minimal standards of rationality."  *Id.* at 934.  Significantly, DHHS's interpretation of the statute more closely aligns with the text than the intent-based or purposive reading proffered by Seymour.  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) ("First, the purpose must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires.").  DHHS's decision was not arbitrary and capricious.

* * *

For these reasons, we **AFFIRM** the district court's judgment.