## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 16-40539

———————

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

GUILLERMO SORIANO ARRIETA,

> Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2017

Lyle W. Cayce
Clerk

————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————

Before STEWART, Chief Judge, and JOLLY and WIENER, Circuit Judges.

CARL E. STEWART, Chief Judge:

Defendant-Appellant Guillermo Soriano Arrieta appeals the district court's denial of his motion to dismiss the indictment charging him under 18 U.S.C. § 922(g)(5)(A) with possession of a firearm and ammunition while unlawfully present in the United States. We AFFIRM the district court's judgment but reform it to correct a clerical error in the statute of conviction.

### I. Background

On August 26, 2015, an officer stopped Arrieta's vehicle in George West, Texas for a defective taillight. After noticing that Arrieta appeared excessively nervous, the officer asked whether there was contraband in the vehicle. Arrieta

disclosed the presence of a firearm and ammunition, and a consent search of the vehicle produced a pistol and over 7,200 rounds of ammunition. Arrieta was then arrested. While Arrieta was in custody, authorities determined that he was a citizen of Mexico and that he was in receipt of relief under the Deferred Action for Childhood Arrivals (DACA) program administered by the Department of Homeland Security (DHS).

According to the DHS's memoranda announcing and describing the DACA program, DACA "is a form of prosecutorial discretion by which the Secretary deprioritizes an individual's case for humanitarian reasons, administrative convenience, or in the interest of the Department's overall enforcement mission." It is "legally available so long as it is granted on a case-by-case basis" and "it may be terminated at any time at the agency's discretion." To qualify, an individual must: (1) have arrived in the United States under the age of sixteen; (2) have continuously resided in the United States for at least five years prior to the issuance of the first DACA memorandum and have been present in the United States on the date of issuance; (3) be currently in school, have graduated from high school, have obtained a general education development certificate, or be an honorably discharged veteran of the Coast Guard or Armed Forces; (4) not have been convicted of a felony, a significant misdemeanor, multiple misdemeanors, or otherwise pose a threat to national security or public safety; (5) not be older than thirty.

The notice provided to Arrieta clarifies that DACA relief "does not confer or alter any immigration status," and the policy memorandum announcing DACA states that it "confers no substantive right, immigration status or pathway to citizenship," as "[o]nly the Congress, acting through its legislative authority, can confer these rights." Recipients of DACA relief are permitted to apply for work authorization, however.

No. 16-40539

Arrieta first entered the United States with his parents as a two-year old, pursuant to a valid visa. He then overstayed that visa, completing high school in the United States. He applied for and received discretionary relief under DACA, spanning two years from November 15, 2013 to November 14, 2015. Arrieta also applied for and received work authorization.

By virtue of the superseding indictment, Arrieta was charged with being an alien illegally and unlawfully in the United States in possession of a firearm affecting interstate and foreign commerce (Count One) and in possession of ammunition affecting the same (Count Two).[1] Arrieta admitted that he was a citizen of Mexico, but moved to dismiss the indictment on the grounds that "relief from removal granted, although not conferring any legal status in this Country, simply means that, for a specified period of time, an individual is permitted to be lawfully liv[ing] in the United States." Arrieta argued that the relief granted under DACA places him in the same position as an individual holding temporary protected status (TPS).  He explained that although it was clear that aliens who have applied for but have not yet been granted lawful status violate Section 922(g)(5)(A), where a defendant was granted TPS this court has held that "it could not say with certainty that Congress intended to criminalize the possession of firearms by such aliens," and applied the rule of lenity to hold that "an alien's presence became lawful for purposes of the firearms statute once TPS status was conferred upon the alien."

The Government responded that TPS was a statutory creation that grants a "status" and carries certain statutory rights. DACA relief, on the other hand, confers no rights or entitlements, and as a form of prosecutorial discretion can be revoked at any time. The Government conceded that relief under DACA conferred lawful "presence," but argued that to avoid prosecution

---

[1] 18 U.S.C. § 922(g)(5)(A).

under Section 922(g), this court's precedent requires a defendant to show lawful "status."

After an extended discussion, the district court took the matter under advisement, and ultimately issued an order denying the motion to dismiss without providing reasons. Arrieta subsequently entered a conditional guilty plea to Count One of the superseding indictment, reserving only his right to appeal the denial of his motion to dismiss.

## II. Standard of Review

This court reviews de novo the district court's denial of a motion to dismiss an indictment. *United States v. Kay*, 513 F.3d 432, 440 (5th Cir. 2007). Issues of statutory interpretation are also reviewed de novo. *See Texas v. United States*, 497 F.3d 491, 495 (5th Cir. 2007). Accordingly, this court reviews de novo whether the grant of relief under DACA rendered Arrieta's presence in the United States lawful under Section 922(g)(5)(A).

## III. Discussion

### A.

On appeal, Arrieta argues that the district court erred in failing to dismiss the indictment because: (1) his receipt of DACA relief and associated benefits consisting of work authorization, permission to hold a social security card and/or driver's license, and two-year protection from removal render him legally and lawfully present in the United States; and (2) receipt of these benefits is sufficient to deprive recipients of fair notice that their presence is unlawful. He reasons that this court should therefore rely on the rule of lenity to hold Section 922(g)(5)(A) inapplicable in light of its ambiguity.

The Government responds that under this court's case law, immigration "status" is the crucial factor in determining the application of Section 922(g)(5)(A). It argues that since Arrieta acquired unlawful immigration status by overstaying his initially valid visa, and since DACA relief by its own terms

does not confer or otherwise affect immigration status, prosecution under Section 922(g)(5)(A) is appropriate in this case.

### B.

Section 922(g)(5)(A) decrees that "[i]t shall be unlawful for any person who, being an alien, is illegally or unlawfully in the United States to . . . possess in or affecting commerce, any firearm or ammunition." Although the statute itself provides no definitional guidance on what it means to be "illegally or unlawfully in the United States," *see* § 921 (defining terms for purposes of the statute), this court has interpreted that phrase to refer to one "whose presence within the United States is forbidden or not authorized by law." *United States v. Orellana*, 405 F.3d 360, 366 (5th Cir. 2005). Accordingly, the question before us is whether an individual in receipt of DACA relief is one whose presence is forbidden or not authorized by law.

Although this precise iteration of the question has not been expressly addressed by a prior panel, its answer lies well within the realm of circuit precedent pertaining to related matters. This precedent reveals that immigration "status" is the key factor in determining the applicability of Section 922(g)(5)(A). In particular, several decisions involving pending applications for either the congressionally created TPS or for adjustment of immigration status cite to the absence of lawful immigration status as the primary factor undergirding the determination that the defendant's presence in those cases was unauthorized by law. *See United States v. Flores*, 404 F.3d 320, 326–28 (5th Cir. 2005) (affording analytical deference ATF regulation interpreting "illegally and unlawfully" as lacking in lawful immigration status, and noting that temporary authorization to be in the country for some purposes does not render a defendant immune to prosecution under Section 922(g)(5)(A)); *United States v. Lucio*, 428 F.3d 519, 520, 524–25 (5th Cir. 2005) (affirming that previous case law interpreting Section 922(g)(5)(A) hinged on

the immigration status of the defendant, and treating the defendant's unlawful immigration status as definitive in application of Section 922(g)(5)(A)); *United States v. Elrawy*, 448 F.3d 309, 314 (5th Cir. 2006) (treating defendant's unlawful immigration status as dispositive factor in application of Section 922(g)(5)(A)). Meanwhile, the primary case Arrieta cites for the proposition that Section 922(g)(5)(A) is inapplicable rests largely on this court's determination that a defendant actually in receipt of TPS possessed a type of lawful status granted by Congress. *See Orellana*, 405 F.3d at 370. Thus, because Arrieta lacks lawful immigration status, he has failed to show entitlement to relief under the application of these cases.

Conceding that DACA relief neither confers nor alters any immigration status, Arrieta argues that the benefits accompanying DACA relief—work authorization, temporary stay of removal, and authorization to hold a social security card and/or driver's license—fostered in him a reasonable perception of lawfulness that justifies application of the rule of lenity. But the rule of lenity represents a last resort that "comes into operation 'at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.'" *Albernaz v. United States*, 450 U.S. 333, 342 (1981) (quoting *Callanan v. United States,* 364 U.S. 587, 596 (1961)). It applies only where a statute as applied remains truly ambiguous after the traditional canons of interpretation have failed. *United States v. Rivera*, 265 F.3d 310, 312 (5th Cir. 2001) (per curiam).

Our circuit has already closely reviewed the text, structure, legislative history, and motivating policies of Section 922(g)(5)(A). *Orellana*, 405 F.3d at 365–70. Although the court in *Orellana* found that the statute remained ambiguous after deployment of these tools and applied the rule of lenity to resolve the ambiguity, it was clear that its choice was informed by the fact that the defendant, who possessed TPS, had a form of lawful status and was in

possession of benefits that uniquely accompanied that status. *See id.* at 370. In cases where the defendant did not hold lawful status, such as *Flores*, *Lucio*, and *Elrawy*, this court has found the statute sufficiently clear to uphold prosecution under Section 922(g)(5)(A). Moreover, not only does Arrieta lack lawful status, but the benefits he claims are virtually identical to the benefits the defendants claimed in *Flores*, *Lucio*, and *Elrawy*, where this court upheld prosecution. *See, e.g., Lucio*, 428 F.3d at 523–24 (noting that defendant possessed employment authorization and stay of deportation but upholding prosecution); *Flores*, 404 F.3d at 323 (noting defendant's possession of employment authorization, temporary stay of removal, a social security card and a Texas identification card but upholding prosecution). What these defendants lacked, and what Arrieta lacks, is lawful status, and the absence of such status is controlling. Accordingly, we hold Section 922(g)(5)(A) applicable here.

C.

The district court's written judgment incorrectly states that the statute of conviction is Section 922(g)(1), rather than Section 922(g)(5)(A), as alleged in Count One of the superseding indictment. Accordingly, and as requested by the Government, we reform the judgment to state the correct statute of conviction. *See* 28 U.S.C. § 2106; *United States v. Mondragon-Santiago*, 564 F.3d 357, 369 (5th Cir. 2009).

### IV. Conclusion

For the reasons stated, we AFFIRM the judgment of the district court, but reform it to reflect conviction under 18 U.S.C. § 922(g)(5)(A).