# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40475

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

ERIK ISRAEL JURADO GARCIA,

     Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
September 8, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:13-CR-333-1

Before REAVLEY, HAYNES, and COSTA, Circuit Judges.

PER CURIAM: [*]

     Erik Israel Jurado Garcia entered a conditional guilty plea to one count of unlawful possession of ammunition under 18 U.S.C. § 922(g)(5)(A), which prohibits possession of a firearm or ammunition by an alien who is "illegally or unlawfully in the United States." Following his sentencing, Garcia appealed the denial of his motion to dismiss the indictment.[1] Garcia argues that he was lawfully in the United States at the time of his arrest because he had Special

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Garcia's plea agreement reserved his right to appeal the denial of his motion to dismiss the indictment. *See* FED. R. CRIM. P. 11(a)(2).

No. 16-40475

Immigrant Juvenile ("SIJ") status.  Alternatively, he argues that if the statute is construed to apply to him, then it is unconstitutionally vague.  For the following reasons, we VACATE the district court's judgment.

## I. Background

Garcia, a citizen of Mexico, entered the United States in October 2010 at the age of seventeen without inspection and authorization or being paroled by an immigration officer.  After immigration officers discovered him a couple of weeks later in a Texas county jail, the Department of Homeland Security ("DHS") charged him with being removable from the United States under 8 U.S.C. § 1182(a)(6)(A)(i).  On December 23, 2010, DHS released Garcia on an Order of Recognizance to the custody of his grandmother, and placed his immigration proceeding within a nondetained docket.

Sometime later, a juvenile court in Texas entered an order declaring Garcia a juvenile dependent on the court due to parental abuse, neglect, or abandonment, and finding that it was not in his best interest to be returned to Mexico.  Garcia subsequently petitioned for SIJ status, which is a form of humanitarian relief provided to alien juveniles who have suffered parental abuse, neglect, or abandonment.[2]  *See* 8 U.S.C. § 1101(a)(27)(J).  Applicants for SIJ status must meet the following criteria:

---

[2] As the Third Circuit has explained:

> The SIJ provisions of the INA were enacted in 1990 to protect abused, neglected, or abandoned children who, with their families, illegally entered the United States. Congress provided an alternative to deportation for these children. Rather than being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States, such children may seek special status to remain in the United States.

*Yeboah v. U.S. Dep't of Justice,* 345 F.3d 216, 221 (3d Cir. 2003); *see also* H.R. Conf. Rep. No. 105-405, at 130 (1997), *reprinted in* 1997 U.S.C.C.A.N. 2941, 2981 ("The language has been modified in order to limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected, or abused children . . . .").

an immigrant present in the United States-- (i) who has been declared dependent on a juvenile court located in the United States . . . and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; (ii) for whom it has been determined in judicial proceedings that it would not be in the alien's best interest to be returned to the aliens or parent's previous country of nationality or country of last habitual residence; and (iii) in whose case the [DHS Secretary] consents to the grant of special juvenile status . . . .

*Id.* Eligibility for SIJ status further requires, inter alia, that the alien be "under twenty-one years of age." 8 C.F.R. § 204.11(c)(1). An alien granted SIJ status is deemed paroled into the United States for purposes of applying for an adjustment of status to that of permanent resident, despite not having been inspected and admitted or otherwise paroled into the United States. *See* 8 U.S.C. § 1255(h).

Garcia's SIJ petition was approved in December 2011. The approval notice informed Garcia that such approval "does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status."[3] On the same day that Garcia filed his SIJ petition, he also applied for employment authorization, which was approved, and adjustment of status to that of permanent resident under 8 U.S.C. § 1255, which remained pending at the time of his arrest.

In March 2013, police in Laredo, Texas, pursuing a lead in a kidnapping

---

[3] Following oral argument, the Government moved to supplement the record to include the Form I-797 notice sent to Garcia informing him that his application for SIJ classification was approved. Garcia does not oppose this motion. We grant the Government's unopposed motion to supplement the record under Federal Rule of Appellate Procedure 10(e)(2).

No. 16-40475

case, stopped a vehicle in which Garcia was a passenger.  The police discovered a magazine to a SIG Sauer semiautomatic pistol in Garcia's pocket containing six live rounds.  A short distance from the vehicle, the police also found a loaded SIG Sauer semiautomatic pistol.  At the time of his arrest, Garcia had just turned twenty years of age and thus still had SIJ status.

A federal grand jury indicted Garcia under 18 U.S.C. § 922(g)(5)(A) as an alien unlawfully in the United States in possession of (1) a firearm (Count One) and (2) ammunition  (Count Two).  After his initial guilty plea was withdrawn, Garcia subsequently moved to dismiss the indictment on the ground that his SIJ status meant that he was not illegally or unlawfully in the United States within the meaning of § 922(g)(5)(A) or, alternatively, that § 922(g)(5)(A) and its implementing regulation are unconstitutionally vague as applied to aliens with SIJ status.  The court denied the motion to dismiss, and Garcia entered a conditional guilty plea on Count Two, which reserved his right to appeal the denial of his motion to dismiss the indictment.  The district court sentenced Garcia to eighty-four months of imprisonment and three years of supervised release.[4]   Garcia timely filed a notice of appeal challenging the denial of his motion to dismiss the indictment and the resulting judgment and sentence. *See* FED. R. APP. P. 4(b)(2).

## II.  Standard of Review

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) over the appeal from a final judgment and sentence imposed by a United States district court.  We review the denial of a motion to dismiss an indictment de novo when the denial was based on either an interpretation of a federal statute, *United States v. Coleman*, 609 F.3d 699, 703 (5th Cir. 2010), or a determination

---

[4] Garcia was also convicted in Texas state court of aggravated kidnapping and sentenced to twelve years of imprisonment.

of a statute's constitutionality, *United States v. Ollison*, 555 F.3d 152, 160 (5th Cir. 2009).

### III.  Discussion

Garcia contends that the district court erred in denying his motion to dismiss the indictment.  First, Garcia argues that, at the time of his arrest, he was not "illegally or unlawfully in the United States" under 18 U.S.C. § 922(g)(5)(A) because "he was lawfully paroled into the United States as a Special Immigration Juvenile."   Alternatively, he argues that, if section 922(g)(5)(A) is construed to apply to him, then it is unconstitutionally vague.  We conclude that strong arguments support the conclusion that Garcia was illegally or unlawfully in the United States under § 922(g)(5)(A), however, given our prior precedents and solid arguments the other way, we conclude that Garcia prevails under the rule of lenity.

### A. Was Garcia "Illegally or Unlawfully in the United States" under 18 U.S.C. § 922(g)(5)(A)?

18 U.S.C. § 922(g)(5)(A) makes it unlawful for any person to possess any firearm or ammunition "who, being an alien . . . is illegally or unlawfully in the United States."  The only dispute over the statute's application to Garcia is whether Garcia was illegally or unlawfully in the United States at the time of his arrest.

"The phrase 'illegally or unlawfully in the United States' is not defined by the statute." *United States v. Flores*, 404 F.3d 320, 326 (5th Cir. 2005).  We have previously interpreted the phrase to refer to one "whose presence within the United States is forbidden or not authorized by law."  *United States v. Arrieta*, 862 F.3d 512, 515 (5th Cir. 2017) (quoting *United States v. Orellana*, 405 F.3d 360, 366 (5th Cir. 2005)).  The parties have argued about the construction of this phrase as set forth in the implementing regulation issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF

regulation"). *See* 27 C.F.R. § 478.11.

A threshold inquiry in this case, however, is whether we must give any deference to the ATF regulation. We have previously held that, "without deciding whether full *Chevron* deference is appropriate . . . , we owe at least some degree of deference to the ATF's interpretive regulation of § 922(g)(5)(A) because it is 'both reasonable and consistent with our interpretive norms for criminal statutes.'" *Flores*, 404 F.3d at 326–27 (footnote omitted) (quoting *United States v. Atandi*, 376 F.3d 1186, 1189 (10th Cir. 2004)). In analyzing the same statute, we have also observed that "the level of deference due an agency's interpretation of a statute imposing criminal liability is uncertain, particularly when the promulgating agency lacks expertise in the subject matter being interpreted." *Orellana*, 405 F.3d at 369. The Supreme Court has now resolved this uncertainty, instructing that no deference is owed to agency interpretations of criminal statutes. *Abramski v. United States*, 134 S. Ct. 2259, 2274 (2014).

In *Abramski*, the Supreme Court declined to show any deference to the ATF's interpretation of 18 U.S.C. § 922—the statute at issue here. *Id.* The Court explained that "criminal laws are for courts, not for the Government, to construe. . . . Whether the Government interprets a criminal statute too broadly . . . or too narrowly . . . a court has an obligation to correct its error." *Id.* Following the Supreme Court's instruction that no deference is owed to agency interpretations of criminal statutes, specifically the ATF's interpretation of 18 U.S.C. § 922, we decline to show deference to the ATF regulation interpreting § 922(g)(5)(A).[5]

---

[5] Even though we owe no deference to the ATF regulation, we may still consider the agency's interpretation to the extent it is persuasive. *See Baylor Cty. Hosp. Dist. v. Price*, 850 F.3d 257, 261 (5th Cir. 2017).

No. 16-40475

Garcia next argues that because his SIJ status is similar to the immigration status at issue in *United States v. Orellana,* we should apply the rule of lenity to exclude him from criminal liability. *See* 405 F.3d at 365–71. We agree.[6]

A good argument can be made that Congress did not intend to insulate otherwise unlawfully present aliens with SIJ status from criminal prosecution under § 922(g)(5)(A). However, we are bound by our precedent in *Orellana,* which creates at least enough ambiguity that the rule of lenity should apply. *See Orellana,* 405 F.3d at 370–71 (applying the rule of lenity to an analogous immigration status of temporary protected status). [7]

We VACATE the judgment of the district court and remand for proceedings consistent with this opinion.

---

[6]  The key feature of temporary protective status that the *Orellana* opinion held resulted in "lawful status," was that it cured the bars to adjustment of status that otherwise prevent those who enter the country unlawfully from obtaining permanent resident status. 405 F.3d at 370 (explaining that a TPS beneficiary "receives the privileges of applying for adjustment of status"). SIJ status similarly allows a recipient to adjust their status. 8 U.S.C. 1255(h)(1); *Ramirez v. Brown,* 852 F.3d 954, 963 (9th Cir. 2017) (noting the government's argument that the SIJ statute provides an even more "precise exception" to the bars on adjusting status  than does the TPS statute, but then explaining that the two statutes are functionally equivalent in eliminating those barriers).

[7] Our recent decision in *United States v. Arrieta,* which addressed an executive order not a statute, examined the first part of the *Orellana* analysis and determined that the defendant in *Arrieta* lacked any arguable status unlike that of the defendant in *Orellana* who "possessed a type of lawful status granted by Congress." *Arrieta,* 862 F.3d at 515. Because our case involves an immigration status like the one at issue in *Orellana, Arrieta* does not aid our decision here.